**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

AMERICAN RESOURCES INSURANCE
COMPANY, INC.                                                      **PLAINTIFF**

VS.                                            **Civil Action No. 4:09-CV-181-HTW-LRA**

W.G. YATES & SONS CONSTRUCTION
COMPANY, ET AL                                                  **DEFENDANTS**

<u>**ORDER**</u>

Before the court are the following motions:

1.      Motion for Summary Judgment [docket no. 79], filed by defendant W.G. Yates &
        Sons Construction Company ("Yates");

2.      Motion for Review of Magistrate Judge Order [docket no. 98], filed by nineteen
        defendants;

3.      Motion for Partial Summary Judgment against the plaintiff [docket no. 112], filed
        by Yates;

4.      Motion for Summary Judgment as to Workers' Compensation Lien [docket no.
        113], filed by Yates;

5.      Motion to Dismiss Individual Co-Defendants [docket no. 120], filed by individual
        defendants Tammy Ducksworth and Hope Haigler;

6.      Motion to Withdraw as Attorney [docket no. 121], filed by attorney for several of
        the individual co-defendants;

7.      Motion to Bifurcate [docket no. 122], filed by nine of the defendants;

8.      Motion in Limine [docket no. 126], filed by six of the defendants;

9.      Supplemental Motion to Withdraw [docket no. 132], filed by the attorney for
        Jamie Tranquillino.

        The court has heard arguments on two of these motions, docket numbers 79 and

112.  The court will announce its ruling on those two motions in this order.  After

1

resolution of those motions, the parties will be afforded the opportunity to argue or amend the remaining motions as appropriate.

This court's subject matter jurisdiction over the underlying declaratory judgment action is founded on diversity jurisdiction, Title 28 U.S.C. § 1332(a).[1]

American Resources Insurance Company, Inc., an Alabama corporation, has its principal place of business in Mobile, Alabama. Defendant Travelers Property Casualty Company of America ("Travelers") is a Connecticut corporation with its principal place of business in Connecticut. The remaining defendants are Mississippi residents.

## I. Facts/ Background

Yates entered into a contract with "Spectrum Concrete Services" on August 19, 2008, to provide concrete services for a construction project at the Jeff Anderson Regional Medical Center ("JARM") in Meridian, Mississippi. Telly Walsworth signed the subcontractor agreement as "owner" of Spectrum Concrete Services. "Spectrum II," a d/b/a of Telly Walsworth, provided a Certificate of Insurance to Yates indicating that FirstComp Insurance Company ("FirstComp") was providing workers' compensation coverage for Spectrum's workers and American Resources Insurance Company was providing commercial general liability insurance.

Prior to the contract in question, Telly Walsworth shared ownership of a company named Spectrum Concrete Services, LLC, with his brother. That company also

---

[1]Title 28 U.S.C. § 1332 states in pertinent part:
(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
    (1) citizens of different States;

purchased insurance from American Resources Insurance Company, but terminated its business operations and cancelled its insurance policy on April 14, 2008, before Telly Walsworth signed the subcontract agreement with Yates.  Cancellation Request, docket no. 87-9.

The parties dispute the relationship between Spectrum Concrete Services; Spectrum Concrete Services, LLC; Spectrum II; and Telly Walsworth (collectively "Spectrum"). Plaintiff alleges that Yates contracted with Spectrum Concrete Services, LLC, which was defunct before the start of this project, and that Telly Walsworth d/b/a Spectrum II performed the concrete work on the project without a subcontractor agreement.  Yates claims that Spectrum Concrete Services was a d/b/a of Telly Walsworth.  Because Spectrum Concrete Services and Spectrum II were both d/b/a's of Telly Walsworth, says Yates, its contract was with Telly Walsworth.

On November 17, 2008, a second story wooden formwork and scaffolding constructed by Yates at its JARM jobsite in Meridian, Mississippi, collapsed, injuring several concrete workers.  Telly Walsworth d/b/a Spectrum II, employed a number of these workers, and carried a workers' compensation insurance policy from FirstComp Insurance Company at the time of the collapse.  Workers' Compensation and Employers Liability Insurance Policy, docket no. 115-1.

Spectrum II's general liability insurance carrier, American Resources Insurance Company ("ARIC"), filed this declaratory judgment action in federal court on December 29, 2009, contesting its duty to indemnify and provide a defense to Yates.  On March 11, 2010, ARIC amended its complaint, replacing "John Doe" defendants, with named individual workers who had, or might make, personal injury claims (Donald Arrington,

3

Tammy Ducksworth, José Refugio Munoz Garcie, José Gonzalez, Raul Gonzales, Hope Haigler, Elias Jacobo, Lina Lopez, Manual Martinez, David McKean, Francisco Medina, Timothy Mobley, Wayne Robertson, Daniel Solis, Jamie Traqillino, Manual Utz, and Jerry Vallarta).

On September 1, 2010, the injured workers sued Yates in the Circuit Court of Lauderdale County, Mississippi, for personal injuries, alleging negligence and/or gross negligence, amending their complaint on February 23, 2011.   Complaints in *David McKean, et al. V. W.G. Yates & Sons Construction*, Cause No. 10-CV-122(W), docket no. 79-1.

Yates filed a motion to dismiss in the state court action, relying on the exclusivity provision of the Mississippi Workers' Compensation Act, on October 25, 2010.  The parties filed briefs regarding Yates' motion to dismiss.  The Circuit Court of Lauderdale County, Mississippi, held a hearing on January 26, 2011.  The state court judge reserved ruling on the motion to dismiss and stayed the case until August, 2011, citing the pendency of this declaratory judgment action. Order of Circuit Court of Lauderdale County, dated February 11, 2011, docket no. 79-2.

On March 22, 2011, with this court's leave, in this federal declaratory judgment action, Yates filed an answer to ARIC's amended complaint, adding a cross claim for declaratory judgment against the individual defendants, a counterclaim against ARIC, and invoking the arbitration provision of its contract with Spectrum.

On June 24, 2011, in this federal action, Yates filed a third party complaint [docket no. 92] against Spectrum II's workers' compensation carrier, FirstComp. FirstComp had issued Workers' Compensation Notices of Liens claiming a subrogation

4

interest against Yates for amounts to be paid to the workers injured at the Yates' jobsite.

Yates, in its third party complaint, requested that this court declare the rights of the

parties with respect to FirstComp's insurance policy and FirstComp's subrogation rights

against Yates.

## II.  Motions for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c);  *see also Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

### A.  Motion for Summary Judgment on Cross Claim [79]

After ARIC amended its complaint to name the individual workers as defendants,

Yates asserted a cross claim for declaratory judgment against those defendants.

[docket no. 70].  Title 28 U.S.C. § 1367[2] confers supplemental jurisdiction over Yates'

cross claim on this court.  The cross claim was filed in accordance with Fed.R.Civ.P.

13(g)[3] and arises from the same transaction or occurrence as the underlying claims in

---

[2]  Title 28 U.S.C. § 1367(a) states:
Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

[3]  Fed.R.Civ.P. 13(g) states:
CROSSCLAIM AGAINST A COPARTY. A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or

5

the ARIC's declaratory judgment action because all claims stem from the collapse at the

Yates' jobsite.

Claiming that the Mississippi Workers' Compensation Act ("MWCA" or the "Act")

barred recovery by these injured workers, Yates asked this court to:

> [D]eclare and enter judgment as follows:
> The Personal Injury Cross Defendants may not pursue any personal injury
> action(s) against Yates on account of any injury/ies allegedly suffered in
> the subject collapse.  Yates' amended answer and counter claim, docket
> no. 70 at 21.

Yates now moves this court to grant it summary judgment on its cross claim.

The individual co-defendants, in their response to Yates' motion for summary

judgment, cross moved to dismiss Yates' cross claim.

The individuals injured in the accident at Yates' work site sued Yates in state

court on September 1, 2010 for negligently causing their injuries.  These individual

defendants oppose Yates' motion for summary judgment arguing that 1) Yates is not

protected from liability by the exclusivity provision of MWCA because Yates' had no

contract with their employer, Spectrum II, and does not qualify as an employer under

the statute; 2) this court should abstain and dismiss Yates' cross claim based on

considerations of comity with the state court; and 3) Yates' cross claim for declaratory

judgment violates the spirit of the Declaratory Judgment Act, because it asks this court

to enjoin tort victims from suing the tortfeasor in their chosen forum.

1.  Mississippi Workers' Compensation Act

Yates' filed its cross claim asking for a declaratory judgment that the MWCA bars

---

may be liable to the crossclaimant for all or part of a claim asserted in the action against the
crossclaimant.

the individual co-defendants from bringing personal injury tort claims against it.  In its motion for summary judgment Yates requests that this court address the merits of its cross claim and grant it judgment as a matter of law.

Workers' compensation statutes are creatures of state law and, thus, this court will analyze this issue under the MWCA, Miss. Code. Ann. § 71-3-1, *et seq.*; *see Patin v. Allied Signal, Inc.*, 77 F.3d 782, 786-87 (5th Cir. 1996).

Each state has put in place a workers' compensation scheme, which replaces common law negligence for injuries in the workplace.  Workers' compensation laws create a no-fault system, with the aim of ensuring that workers and their families receive prompt payments for job-related injuries.  *Doubleday v. Boyd Const. Co.*, 418 So.2d 823, 825-26 (Miss.1982).

While the Act mandates that covered employers provide compensation insurance to protect their employees, it removes from the employees and their families the right to sue compliant employers for negligence.  *Id.*;  Miss. Code Ann. §§ 71-3-7,[4] 71-3-9.  The provision of the Act which abrogates common law remedies, referred to as the "exclusive remedy" provision, bars workers from suing their employers if the employer

---

[4] Miss. Code Ann. § 71-3-7 states in part:
Compensation shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease. An occupational disease shall be deemed to arise out of and in the course of employment when there is evidence that there is a direct causal connection between the work performed and the occupational disease.

Every employer to whom this chapter applies shall be liable for and shall secure the payment to his employees of the compensation payable under its provisions.

In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment.

7

provides compensation insurance coverage to the worker.  Miss. Code Ann. § 71-3-9.[5]

If the employer fails to provide compensation insurance, the injured employee may elect

to receive statutory compensation or sue the employer in tort.  *Id.*  If the employee sues,

the Act bars the employer from raising some common law tort defenses.  *Id.*  The

MWCA does apply to intentional acts by the employer or co-workers.  *Davis v. Pioneer,*

*Inc.*, 834 So.2d 739, 741-42 (Miss. Ct. App. 2003).

 The Act extends to contractors and subcontractors, placing the ultimate

responsibility on general contractors to ensure that subcontractors' employees have the

benefit of compensation insurance.  The Act also extends the protections of the

"exclusive remedy" provision to general contractors.  The key portion of this section of

the Act states:

> In the case of an employer who is a subcontractor, the contractor shall be
> liable for and shall secure the payment of such compensation to
> employees of the subcontractor, unless the subcontractor has secured
> such payment.  Miss. Code Ann. § 71-3-7.

 The parties to this suit agree that Yates, the contractor, may benefit from the

"exclusive remedy" provision of the Act if it contractually obligated Spectrum II, the

injured workers' employer, to purchase compensation insurance for its employees.  The

---

[5] Miss. Code Ann. § 71-3-9. Employer liability exclusive, states in part:
The *liability of an employer to pay compensation shall be exclusive and in place of all other*
*liability of such employer to the employee*, his legal representative, husband or wife, parents,
dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or
otherwise from such employer on account of such injury or death, except that *if an employer*
*fails to secure payment of compensation as required by this chapter, an injured employee, or his*
*legal representative in case death results from the injury, may elect to claim compensation*
*under this chapter, or to maintain an action at law for damages on account of such injury or*
*death*. In such action the defendant may not plead as a defense that the injury was caused by
the negligence of a fellow servant, nor that the employee assumed the risk of his employment,
nor that the injury was due to the contributory negligence of the employee.

parties dispute facts related to whether Spectrum II entered a subcontract with Yates for the JARM project.  They also dispute, assuming a subcontract existed, the terms of that contract with respect to maintenance of compensation insurance.

The parties also hotly contest whether under Mississippi law the general contractor must contractually require the subcontractor to buy compensation insurance, in order for the general contractor to receive immunity under the Act.

The individual co-defendants argue that Mississippi law requires a contract between the contractor and subcontractor in order for the general contractor to qualify as a statutory employer, and receive protection against common law liability under the Act.  In this case, say the individual co-defendants, the only contract executed was between Yates and Spectrum Concrete Services, a separate entity from the injured workers' employer, Spectrum II.  Further, argue these individual defendants, even if the subcontractor agreement is deemed to bind Spectrum II, its language regarding compensation insurance is insufficient to protect Yates, because it does not explicitly mandate that the subcontractor purchase compensation insurance.[6]

---

[6] The Yate's subcontract signed by Telly Walsworth for Spectrum Concrete Services contains the following language regarding the subcontractor's duty to maintain insurance: Article 9.0 - Subcontractor shall obtain, before commencement of work, and shall maintain until final acceptance of the Prime Contract work, full insurance coverage, including as a minimum the same types of insurance at the same policy limits which are specified by the Prime Contract or which the Contractor requires for the Project, whichever is greater.  The Subcontractor is hereby made responsible for determining and obtaining the types and extent of such additional insurance as may be necessary to give adequate and complete protection to the Subcontractor, the Contractor, and the Owner from claims for property damage and from claims for bodily injury, including death, which may arise from or be connected with this Subcontract, [. . . ].  The Subcontractor shall name the Contractor as a named additional insured (but not subject to premium terms or liability) on all insurance policies and coverages [. . .].
Article 9.2 - Before beginning any Subcontract work, the Subcontractor shall deliver to the Contractor three (3) copies of Certificates of Insurance, certifying the types and the amounts of coverage, certifying that said insurance was in force before Subcontractor started work,

Yates argues that Mississippi workers' compensation law protects the subcontractor, if the employee receives compensation insurance benefits, regardless of whether an agreement exists between the contractor and subcontractor.  This immunity, says Yates, springs from the formation of the contractor-subcontractor relationship, and the liability the law places on the contractor to ensure protection for the subcontractor's employees.

Mississippi Workers' Compensation Law and Contractor Immunity

Early Mississippi Supreme Court cases applied immunity to general contractors *if they required their subcontractors to carry compensation insurance*.  *See Doubleday*, 418 So.2d at 826-27.  In *Doubleday v. Boyd Construction Co.*, the Mississippi Supreme Court enunciated the long-standing rule that general contractors benefit from the "exclusive remedy" provision of Mississippi workers' compensation law if they contractually require their subcontractors to maintain compensation insurance for their employees.  *Id.*  The Mississippi Supreme Court held that "a contractor is liable for and shall secure compensation to the employees of his subcontractors, even though such contractors have the status of independent contractors, and that if such contractor has in fact, secured such compensation, either directly or indirectly through the subcontractor, the remedy under the [Workers' Compensation] Act is exclusive.  *Id* at 826.  *Doubleday* ensures that, under the MWCA, a general contractor is immune from

---

certifying that said insurance applies to the Subcontract work and to all activities and liability of the Subcontractor pursuant to this Subcontract, and certifying that the Contractor is a named additional insured on Subcontractor's policies of Insurance by endorsement in a form acceptable to Contractor.  W.G. Yates & Sons Construction Company Subcontract, dated 8/19/08, docket no. 112-1.

personal injury liability for subcontractors' employees, if the general contractor "complies with the statute by contractually securing compensation insurance by his subcontractor." *Id.*

The parties have cited a number of cases which document the evolution of contractor immunity under the Act.  The court in *Salyer v. Mason Technologies, Inc.*, 690 So.2d 1183 (Miss. March 27, 1997), found that the contractor was protected by the "exclusive remedy" provision, regardless of whether the contractor mandated that the subcontractor purchase compensation insurance.  The fact that the subcontractor provided these benefits to its employees was sufficient.  In *Salyer* an employee of a subcontractor sued the general contractor, Mason, for injuries sustained on a construction project.  SCI Steelcon, the subcontractor and plaintiff's employer, carried workers' compensation insurance which paid benefits to the plaintiff. The state circuit court granted summary judgment in favor of Mason, finding the general contractor to be a statutory employer entitled to the "exclusive remedy" defense under the MWCA.  The Supreme Court of Mississippi affirmed.

The Mississippi Supreme Court discussed the standard from *Doubleday v. Boyd Construction*, saying that "where a subcontractor provided compensation coverage to its employees pursuant to its contract with the prime contractor, the prime contractor qualified as a statutory employer and was immune from a common law tort suit by the injured employee." 690 So.2d at 1184.  The *Salyer* court extended this immunity to prime contractors regardless of whether they contractually required their subcontractors to carry compensation coverage.  The court stated:

Although there is no evidence in the record that Mason contractually

11

required its subcontractors to provide compensation coverage for their employees, we see no reason to draw a distinction between prime contractors who contractually require subcontractors to provide compensation coverage on one hand, and prime contractors who hire subcontractors who *already* provide compensation coverage on the other hand. *Id* at 1185.

The court in *Richmond v. Benchmark Construction Corp.*, 692 So.2d 60 (Miss. April 10, 1997), decided just weeks after *Salyer v. Mason Technologies, Inc.*, found that a written subcontractor agreement was not necessary to protect the general contractor from tort liability.  In the *Richmond* case, an employee for subcontractor United Piping Systems, Inc. ("UPS"), sued the general contractor, Benchmark, for injuries sustained on Benchmark's project at a Kroger store.  The trial court granted summary judgment in favor of Benchmark, and Richmond appealed.  On appeal, the Mississippi Supreme Court affirmed that the "exclusive remedy" provision of the MWCA protected a general contractor which had an oral agreement with the subcontractor to provide compensation insurance.  The court found that the statute puts the general contractor in the place of the subcontractor.  If the subcontractor fails to procure compensation insurance, the general contractor must provide it.  The court said that the statute does not require a written contract between general contractor and the subcontractor, but "[i]f a contractor-subcontractor relationship exists, the employee of the subcontractor covered by workers' compensation insurance is prohibited from making a common law claim for negligence or gross negligence against the contractor."  *Id* at 63.

Some confusion exists, reflected in the parties' opposing briefs, as to what affirmative steps the contractor must take to enjoy immunity under the Act.  This conflict stems from recent Mississippi Supreme Court cases which cite *Doubleday* and its

12

language granting immunity to contractors who contractually require subcontractors to provide insurance.  These cases, however, confront factual scenarios in which the existence of a subcontract agreement meeting the requirement of *Doubleday* is not in question.

One case relied upon by the individual co-defendants is *Powe v. Roy Anderson Construction Co.*, 910 So.2d 1197 (Miss. Ct. App. Sept. 6, 2005), *reh'g denied,* 942 So.2d 164 (Aug. 8, 2006).  The individual co-defendants argue that this case says that the MWCA only protects a prime contractor from tort liability if the contractor has contractually obligated the subcontractor to carry compensation insurance, and the subcontractor does in fact provide that insurance.  In the *Powe* case, a subcontractor's employee sued the subcontractor and the general contractor for injuries sustained when a platform collapsed on the contractor's construction worksite.  The injured employee received workers' compensation benefits through his employer, the subcontractor.  The trial court granted summary judgment to the defendants, finding that the worker's claims were barred by the exclusive remedy provision of the MWCA.

The *Powe* court opinion cites  *Doubleday v. Boyd Construction*, saying that the immunity of the "exclusive remedy" provision of the Act extends "to general contractors who have required subcontractors to secure workers' compensation insurance."  *Id* at 1205.  The individual co-defendants argue that the standard from *Doubleday*, which protected contractors only when they contractually obligated subcontractors to provide compensation insurance, continues as the standard today.

In the *Powe* case, however, the contractor, Roy Anderson Construction Company, had unquestionably required its subcontractor to provide compensation

13

insurance.  The *Powe* court found that, in the circumstances presented, the contractor was protected by the "exclusive remedy" provision of the MWCA.  Because the Mississippi Court of Appeals found that Roy Anderson Construction Company had complied with the statute under the particular facts presented, does not necessarily mean that the contractor could not have availed itself of the MWCA protections had it acted less decisively to ensure compensation coverage for the subcontractor's workers.

This court finds a better reading of the current standard in Judge Leslie Southwick's concurrence in the case of *Lamar v. Thomas Fowler Trucking, Inc.*, 956 So.2d 911, 927 (Miss. Ct. App. 2006).  The Mississippi Supreme Court affirmed the appeals court's ruling, but disagreed with the majority's reasoning.  In it's opinion, the supreme court affirmed the decision based on a rationale similar to that offered by Judge Southwick's concurrence.  *See Lamar v. Thomas Fowler Trucking, Inc.*, 956 So. 2d 878 (Miss. 2007).  The Lamar case differs from the case *sub judice*, in that it concerns the subcontractor's immunity, and not that of the general contractor.  But the framework for workers' compensation law described in Judge Southwick's concurrence applies to the case at hand.

In the *Lamar* case, the plaintiff's decedent worked for Fowler Trucking, a company which the general contractor, Golden Timber, Inc., hired to haul timber. Golden Timber and Fowler Trucking had a long-standing agreement by which Golden Timber maintained compensation insurance covering Fowler Trucking's employees, and deducted the costs of insurance from its payments to Fowler Trucking.  Fowler Trucking did not carry its own compensation insurance.  A Fowler Trucking employee was killed while hauling logs for Golden Timber.  The decedent's older daughter sued both the

14

subcontractor and general contractor for her father's wrongful death.  Golden Timber's workers' compensation carrier paid benefits to the employee's younger daughter, the deceased worker's dependent child.  The older daughter, and plaintiff, was not a dependent and received no workers' compensation benefits.  The trial court dismissed Golden Timber, the contractor, finding it immune under the MWCA because its workers' compensation carrier paid benefits for the employee's death.

The Court of Appeals found that Fowler Trucking had not complied with the workers' compensation statute, because it had not "procured" compensation insurance for its workers.  The court assessed whether its relationship with the contractor which covered the decedent afforded Fowler Trucking "down-the-line" immunity.  The appeals court came to the conclusion that Fowler Trucking's failure to purchase compensation insurance opened it to tort liability.  The court decided, however, that because the dependent child of the deceased employee had received workers' compensation benefits, the plaintiff could not sue.  The court deemed the acceptance of benefits by the dependent child an "election" on the part of the family to receive compensation under the MWCA instead of suing for negligence. *Lamar*, 956 So.2d at 926.

The Mississippi Supreme Court affirmed the decision by the Court of Appeals, but disagreed about whether Fowler Trucking had complied with the MWCA.  The Supreme Court, applying similar reasoning as Judge Southwick in his Court of Appeals concurrence, found both the contractor and subcontractor qualified for statutory immunity under the "exclusive remedy" provision.

15

In his Mississippi Court of Appeals concurrence, Judge Southwick[7] stated:

[T]he Mississippi statutes establish a scheme of protection in which the contractor is the primary insurer for the injuries of the workers of subcontractors. A subcontractor may legally provide that protection instead. In certain situations, if either secures workers' compensation protection, both the general and the sub-contractor are entitled to the exclusive remedy provision.

Judge Southwick reviewed the history of Mississippi case law related to contractor immunity under the MWCA, interpreting *Richmond v. Benchmark Construction* as a reaction rejecting a prior Supreme Court Justice's attempt to expand contractor tort liability. *Id* at 929-30 (citing *Nash v. Damson Oil Corp.*, 480 So.2d 1095 (Miss. 1985)(Sullivan J., concurring). In his *Lamar* concurrence, Judge Southwick referenced *Richmond* saying:

the holding of *Richmond* is that a contractor who does not require a subcontractor to obtain insurance and does not itself do so remains an employer, i.e., the contractor of the subcontractor is a statutory employer and is never a third party under section 71-3-71, regardless of whether there is insurance. *Lamar*, 956 So.2d at 930.

He cited the language of the statute in conjunction with the Richmond opinion, saying that the *Richmond* decision, which "gave tort suit immunity to lucky general contractors who did nothing to assure that subcontractors' employees were protected by workers' compensation insurance, but the employees had coverage anyway," was consistent with the statutory language indicating that the contractor shall be liable, "unless the subcontractor has secured such payment." *Lamar*, 956 So.2d at 930-31.

This court agrees with Judge Southwick's determination that if the subcontractor

---

[7] Judge Southwick since has been appointed to the United States Fifth Circuit Court of Appeals.

and contractor have formed a working relationship, the contractor is always a statutory employer under the MWCA.  If the contractor does not provide compensation insurance, and the subcontractor also fails to insure its employees, the employees may either elect to receive statutory compensation from the contractor, or may sue the contractor in tort.

Yates also cites *Weiss v. Granite Construction Co.*, 2009 WL 3334620 (S.D.Miss Oct. 14, 2009), in which a subcontractor's employee sustained injuries while working on a highway construction project.  He sued his employer (the subcontractor) and the general contractor, a joint venture between two construction companies, for negligence. The district court found his state tort law claims were barred by the exclusive remedy provision of workers' compensation law.  The court cited *Richmond v. Benchmark Constr. Corp.*, 692 So.2d 60, 63 (Miss. 1997), saying, "[t]herefore, where 'a contractor-subcontractor relationship exists, the employee of a subcontractor covered by workers' compensation insurance is prohibited from making a common law claim for negligence or gross negligence against the contractor.'"  *Id* at *3.

Finally, an earlier Mississippi Supreme Court decision, *Crowe v. Brasfield & Gorrie General Contractor, Inc.*, 688 So.2d 752, 757 (Miss. 1996), cautions against a narrow reading of *Doubleday*.  In the *Crowe* case, the United States Court of Appeals for the Fifth Circuit certified to the Mississippi Supreme Court the question of "whether Mississippi's Workers' Compensation Act extends immunity to a general contractor or a subcontractor in a negligence action brought against them by the employee of a sub-subcontractor."  *Id* at 753.  The plaintiff argued that the "*Doubleday* decision requires the general contractor to either secure the workers' compensation insurance [. . .] or contractually require that the subcontractor purchase workers' compensation insurance"

in order to benefit from immunity under the statute.  *Id* at 756.  The Mississippi Supreme

Court responded that:

> *Doubleday* does not stand for the narrow proposition advanced by
> [the plaintiff]. [. . .] This Court did not hold that the only way a
> general contractor could fulfill this obligation [to secure
> compensation] was either to purchase the insurance itself or to
> specifically contract with the subcontractor requiring such
> coverage.  In fact, we stated that '[i]t is our opinion [that] the
> legislature did not intend to subject a general contractor to
> common law liability if he complied with § 71-3-7 by requiring the
> subcontractor to have workmen's compensation insurance."  688
> So.2d at 757.

The cases following *Doubleday* indicate that a contractor does not have to

contractually mandate that a subcontractor obtain compensation insurance to benefit

from the "exclusive remedy" defense in the Act.  The formation of a contractor-

subcontractor relationship is key to imposing liability on the contractor to provide

compensation insurance to the subcontractor's employees.  When a subcontractor

performs work for a contractor, that contractor is by definition a statutory employer

under the Act.  Once the parties establish that the contractor-subcontractor relationship

exists, the only remaining question is whether the subcontractor or contractor secured

compensation insurance which covered the workers' injury.  If the answer is yes, the

injured employee cannot sue the contractor for negligence.  If the answer is no, the

injured employee may elect to pursue benefits under the Act or sue in tort.

This interpretation comports with the language and spirit of the Act, imposing

liability and ensuring the injured employee can receive immediate payment.  The other

side of this coin is that the contractor has the "exclusive remedy" defense available to it,

regardless of whether it has imposed a written or verbal requirement on the

subcontractor.

In this case, the parties do not dispute the following facts.  Telly Walsworth, representing either Spectrum Concrete Services, LLC, or a d/b/a, signed a subcontractor agreement to perform work for Yates.  The injured employees worked for Spectrum II, a d/b/a of Telly Walsworth.  These employees worked on the Yates' JARM jobsite performing concrete services.  Walsworth billed Yates for these services under the name of Spectrum II.  *See* Sworn Statement of Payment Obligations, docket no. 113-3.  Walsworth provided a Certificate of Liability Insurance to Yates demonstrating that Spectrum II carried workers' compensation insurance for its employees.  Certificate of Liability Insurance, docket no. 113-2. Walsworth d/b/a Spectrum II's compensation insurance, purchased from First Comp Underwriters, paid workers' compensation benefits to the injured employees.

Yates would only be subject to tort liability, under these circumstances, if this court found it to be a "third party," and not a statutory employer; or if the employees did not receive compensation coverage.  Given the facts present in the record, Yates cannot be a "third party" under the statute.  Neither Spectrum II, nor Yates dispute that Spectrum II performed work and was paid as a subcontractor to Yates.  The terms of their agreement may be disputed, but the relationship is clear.  If this court were to decide otherwise, Yates could avoid its responsibility under the statute to ultimately ensure its subcontractor's employees compensation by disputing some aspect of its agreement with the subcontractor.  This no-fault system could be foiled, and payments to workers delayed, based on contract squabbles between contractors and subcontractors.

This court finds that Spectrum II and Yates entered into a contractor-subcontractor relationship as contemplated by the workers' compensation statute. Yates had a duty under the statute to ensure Spectrum II's workers received compensation in the event of injury.  The fact that Yate's duty was never triggered to pay compensation, because Spectrum II's compensation insurance carrier paid benefits, does not change this analysis.  Had Spectrum II failed to provide coverage, Yates would have been obligated to do so.

2.  *Brillhart/Wilton* Abstention Doctrine

The individual co-defendants have asked this court to abstain from deciding Yates' cross claim against them under the *Brillhart/Wilton* abstention doctrine, to allow these issues to be decided in state court.  The *Brillhart/Wilton* abstention doctrine applies to declaratory judgment actions for which parallel litigation is pending in state court.

Usually, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284, 115 S.Ct. 2137, 2141, 132 L.Ed.2d 214 (1995)(citing *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978)). Abstention in most civil actions is governed by the *Colorado River* abstention doctrine, which limits the court's ability to avoid hearing the case to those instances in which it finds "exceptional circumstances."  *Id* at 284-285 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).  The *Brillhart/Wilton* abstention doctrine, an exception to the *Colorado River* doctrine, applies to actions brought under the Declaratory Judgment Act and vests

20

greater discretion in the district court.  *Id* at 285.

In *Brillhart v. Excess Ins. Of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed.1620 (1942), the United States Supreme Court addressed how the Federal Declaratory Judgments Act impacted the district court's discretion to abstain from hearing a declaratory judgment action which had parallel litigation ongoing in state court.  The *Brillhart* case involved an excess insurance provider's suit for declaratory judgment regarding its liability to pay a default judgment against an insured.  The claimant in the default judgment action had initiated garnishment proceedings in state court against the insured, the insured's primary insurer, and ultimately against Excess Insurance of America ("Excess"), the secondary insurance provider.  *Id* at 492-93.  The district court granted the claimant's motion to dismiss, which had been argued, in large part, on the grounds that the claims involved in the declaratory judgment action could be resolved in the state court garnishment action.  *Id* at 493.  The court of appeals reversed the district court, directing it to allow the declaratory judgment action to proceed.  *Id* at 494.

The majority in *Brillhart*, stated that "[a]lthough the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act [. . .], it was under no compulsion to exercise that jurisdiction."  *Id* at 494.  Pointing out that the issue of abstention was squarely within the discretion of the district court, the Court reversed the appeals court and remanded the case to the district court.  The Court cited, as key for the district court's decision on abstention, whether the issues not foreclosed by substantive law "can be better settled in the proceeding pending in the state court."  *Id* at 495.

In *Wilton v. Seven Falls Co.*, the Supreme Court confirmed that the trial court has

21

discretion to abstain in declaratory judgment actions which have parallel proceedings in state court.  515 U.S. at 286.  The Court stated that "[d]istinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River*."  *Id.*  The *Wilton* Court cited its *Brillhart* decision, directing the district court to examine, "the scope of the pending state court proceeding and the nature of defenses open there," when deciding whether to abstain in the declaratory judgment action.  *Id* at 283.

The Fifth Circuit has provided further guidance for application of the *Brillhart/Wilton* abstention doctrine.  In *Sherwin-Williams*, the Fifth Circuit described three guiding principles of law which underpin its test for abstention–"the proper allocation of decision-making between state and federal courts," "fairness," and "efficiency."  *The Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 390-91 (5th Cir. 2003).  These principles should be considered when evaluating the three part test for abstention announced in *Orix v. Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).  The *Orix* test requires the district court to determine: "(1) whether the declaratory judgment action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action."  343 F.3d at 387.  If the court affirmatively answers the first two parts of the test, it should evaluate the third part by applying the non-exclusive list of factors described in the case of *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994).  The *Trejo* factors are:

    1.  whether there is a pending state action in which all of the matters in

      controversy may be fully litigated;

2. whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

3. whether the plaintiff engaged in forum shopping in bringing the suit;

4. whether possible inequalities in allowing the declaratory plaintiff to gain precedence in time or change forums exist;

5. whether the federal court is a convenient forum for the parties and witnesses;

6. whether retaining the lawsuit would serve the purposes of judicial economy; and

7. whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.
   V343 F.3d at 388.

The Fifth Circuit, in its *Sherwin-Williams* opinion, placed particular weight on the pendency of a state court lawsuit, to reverse the district court's decision to abstain.  343 F.3d at 394 ("although the lack of a parallel state proceeding did not require the district judge to hear the declaratory judgment action, it is a factor that weighs strongly against dismissal.").  In that opinion, the Fifth Circuit also considered factors beyond those listed in *Trejo*, such as the presence of federal law questions, and whether the state law issues were novel.  *Id* at 396.

    Application of *Trejo* factors

      a.  Pending state court action

The individual co-defendants filed suit on September 1, 2010, claiming negligence and demanding compensation for personal injuries caused by the collapse at the Yates' jobsite.  The state court judge stayed that lawsuit from February 11, 2011 through August 1, 2011, pending resolution of this declaratory judgment action.  Prior to

staying the state court litigation, the Circuit Court of Lauderdale County received briefs

regarding Yates' motion to dismiss. Yates based its motion to dismiss, filed in state

court, on similar grounds as this motion for summary judgment--that the tort claims are

barred by the exclusive remedy provision of the MWCA.  The parties dispute whether

Yates' motion to dismiss was argued before the judge at a January 26, 2011 hearing.

Yates claims that the motion was noticed for hearing, but that the Lauderdale County

District Court Judge stayed the case before hearing oral arguments.

Yates argues that questions regarding the exclusive remedy provision of the

MWCA were raised first in this action in federal court and must be decided here.  ARIC

raised this defense to insurance coverage against Yates in Count V of its original

complaint on December 29, 2009.  Count V of the original complaint states:

> 49.    American Resources Pollicy No. ATA0416900 contains the
> following exclusion:
> SECTION II - LIABILITY
> . . .
> B. Exclusions
> > 1.  Applicable to Business Liability Coverage
> > This insurance does not apply to:
> > . . .
> > > d.  Workers' Compensation and Similar Laws
> > > Any obligation of the insured under a workers'
> > > compensation, disability benefits or unemployment
> > > compensation law or any similar law.

> 50.    If Spectrum Concrete Services or Yates are insureds under
> American Resources Policy No. ATA-0416900, this exclusion
> applies to eliminate coverage because the injured individuals'
> exclusive remedy is under Mississippi workers' compensation laws.
> Original complaint, docket no. 1, ¶¶ 49-50.

Further, the workers' compensation issue, say both Yates and ARIC, is

intertwined with the arguments underpinning the underlying declaratory judgment

24

action, and must be decided by this court whether it abstains or decides Yates'

cross claim.

      b.  Whether the plaintiff filed the declaratory judgment action in anticipation of defendant's lawsuit

The record contains a demand letter dated November 21, 2008, addressed to

Travelers Insurance Company, Yates' insurance carrier, with a complaint attached,

notifying Travelers that seventeen plaintiffs were filing a lawsuit against Yates for

damages related to the November 17, 2008, collapse at the Yates' construction site.

More than a year later, the workers had not filed suit.

On December 29, 2009, ARIC filed this declaratory judgment action, including as

defendants "John Does (1-20) [who] are as yet unknown individuals or entities who

were working at the W.G.Yates & Sons Construction site [. . .] and may have claims for

bodily injuries [. . .] as a result of the collapse."   Complaint, ¶ 7.  ARIC amended its

complaint on March 11, 2010, replacing the John Doe defendants with the current

named individual co-defendants.  Amended complaint, ¶ 7.  These individual co-

defendants filed a tort action against Yates and others in state court on September 1,

2010.  Yates filed its cross claim for declaratory judgment against the individual co-

defendants on March 22, 2011.

Yates' cross claim was not filed in anticipation of the state court action, but in

reaction to it.  Yates says this is an effort to litigate the key issues central to the many

claims and parties in one action.

      c.  Whether the plaintiff engaged in forum shopping in bringing the suit

Yates appeared and defended the individual co-defendants' personal injury suit in state court.  The individual co-defendants argue that Yates should not be allowed to bar any claims they may have properly brought in state court by bringing this declaratory judgment cross claim here.

As mentioned above, the issue of the MWCA was raised here before the state court suit was filed.  It is properly before this court, brought by the plaintiff in the underlying declaratory judgment action.

      d.  Whether possible inequalities in allowing the declaratory plaintiff to gain precedence in time or change forums exist

The individual co-defendants argue that it would be unfair to allow Yates to have its cross claim heard in federal court prior to a decision from the state court in Yates' motion to dismiss.  The individual co-defendants and Spectrum II, say that all parties have expended considerable expense preparing for and arguing before the state court.

Yates says that the state court has not heard arguments on its motion to dismiss, and no decision from the state court is pending.  Further, Yates again points to the need for this court to decide the issue of its immunity under the MWCA in order to address the underlying declaratory judgment action filed by ARIC.

Contrary to the individual co-defendants arguments, this court is persuaded that fairness dictates deciding the MWCA issues here in a consolidated action.  This court will inevitably address this issue as part of ARIC's declaratory judgment action.  As it stands, the individual defendants have had the opportunity to brief this issue and provide extensive oral argument to the court.  Abstaining from deciding Yates' cross claim would unfairly exclude the individual co-defendants from full participation in a

determination which is central to its state court claims.

> e. Whether the federal court is a convenient forum for the parties and witnesses

Parties to the personal injury action hail from Philadelphia, MS; Laurel, MS; Hattiesburg, MS; Soso, MS; Mount Olive, MS; Poplarville, MS.  The events surrounding the personal injury action occurred in Meridian, MS, and the individual co-defendants argue that many of the witnesses, including laborers, bystanders, and expert engineers, all reside in Lauderdale County.

> f. Whether retaining the lawsuit would serve the purposes of judicial economy

The individual co-defendants argue that this factor weighs in favor of abstention because the issues underlying the cross claim and this motion for summary judgment have been briefed and argued in the Circuit Court of Lauderdale County.

Yates claims that the parties filed briefs addressing its immunity under the MWCA in the Circuit Court of Lauderdale County, but that the state court stayed the action before hearing arguments on that issue.  This court, says Yates, could achieve greater judicial economy by deciding this motion, because the matter has been fully briefed and argued here, and returning the issue to state court would only prolong litigation in both forums.

> g. Other factors:  questions of federal law and novelty of state law issues

Issues of federal law are lacking in this diversity suit, but employer immunity under the MWCA has been decided many times in state and federal courts in Mississippi.  While contractor immunity under these specific circumstances may not be well-tread ground, the Mississippi appellate courts have provided ample guidance for

this federal court's decision.

Abstention is generally reserved for exceptional circumstances.  In the case of declaratory judgment actions, the district court need not demonstrate these exigencies, and has considerable discretion regarding whether to abstain.  But the obligation to exercise the jurisdiction conferred on it by Congress, must be considered by the court at all times.

This court is not persuaded that abstention is appropriate in this case.  The great weight of the factors dictate that this court address these claims.  Contractor immunity under the MWCA is a central issue which effects all claims, including Yates' counter claim and cross claim, in this suit.  Even if this court were to abstain from deciding Yates' cross claim against the individual co-defendants, this court is not insulated from addressing this issue.  The underlying declaratory judgment suit by ARIC raised the issue as early as December 29, 2009, approximately eight months before the individual co-defendants filed suit in state court.  This issue is implicated in ARIC's complaint and amended complaint, and is central to all three motions for summary judgment before this court.  Further, principles of fairness require that this court decline abstention and allow all parties affected to fully participate in briefing and arguments.


3.  The Declaratory Judgment Act

The individual co-defendants argue that forcing them to litigate their personal injury tort claims in this forum as a declaratory judgment action violates the spirit of the

28

Declaratory Judgments Act, Title 28 U.S.C. § 2201.[8]  The individual co-defendants cite

a Seventh Circuit case which states:

> to compel potential personal injury plaintiffs to litigate their claims at a time
> and in the forum chosen by the alleged tort-feasor would be a perversion
> of the Declaratory Judgment Act.  The primary purpose of that Act is 'to
> avoid accrual of avoidable damages to one not certain of his rights and to
> afford him an early adjudication without waiting until his adversary should
> see fit to begin suit, after damage had accrued.'  *Cunningham Brothers,*
> *Inc. v. Bail*, 407 F.2d 1165, 1167-68 (7th Cir. 1969).

In *Frito-Lay, Inc. v. Dent*, 373 F.Supp. 771 (N.D. Miss 1974), the district court

dismissed, *sua sponte*, a lawsuit brought by Frito Lay seeking non-liability related to a

multi-vehicle accident involving a Frito-Lay truck.  The court stated that "it is not one of

the purposes of the declaratory judgments acts to enable a prospective negligence

action defendant to obtain a declaration of non-liability."  373 F.Supp. at 773 (citing

Wright and Miller, Federal Practice and Procedure, Civil § 2765).

The underlying declaratory judgment action filed by American Resources *sub*

*judice*, however, is properly before this court and squarely fits within the purposes of the

Declaratory Judgment Act.  Because of the peculiar circumstances of this case,

involving common claims and defenses in the underlying declaratory judgment action

and the cross claim against the individual defendants, this court finds that it should

address the cross claim here.

## B.  Motion for Partial Summary Judgment [112]

---

[8]  Title 28 U.S.C. § 2201 states in pertinent part:
(a) In a case of actual controversy within its jurisdiction, [. . .], any court of the United States,
upon the filing of an appropriate pleading, may declare the rights and other legal relations of any
interested party seeking such declaration, whether or not further relief is or could be sought.
Any such declaration shall have the force and effect of a final judgment or decree and shall be
reviewable as such.

Yates has filed a motion asking the court to decide the issue of whether ARIC owes Yates a duty to defend it in the underlying tort action, and to indemnify it.  Yates' reserves it's right to present a claim for bad faith denial of coverage at trial.

ARIC, in its amended complaint for declaratory judgment [docket no. 16] asserts the following grounds as a basis to deny coverage: 1) breach of duty to cooperate; 2) Yates is not an insured under the "who is an insured" clause; 3) the policy's "other insurance" clause makes Yates' general liability carrier, Travelers, its primary insurer for this risk; 4) the "employers liability exclusion" excludes coverage; 5) the "workers compensation exclusion" excludes coverage; 6) Yates violated its duty to provide notice; 7) Yates is not covered as an "additional insured;" 8) property damage was not the result of an "occurrence" as defined by the policy; and 9) a "property damage exclusion" excludes coverage.

In its response to Yates motion for summary judgment regarding ARIC's duty to defend and indemnify Yates, ARIC only addressed its arguments that Yates failed to provide notice and failed to cooperate, Yates is not an insured under the policy, and the other insurance clause makes the ARIC policy excess over Yates' primary insurance. ARIC did not argue the last two grounds from its amended complaint, which allege that "property damage [was] not [the] result of an occurrence" and the contract contained "property damage exclusions."

1.  Breach of duties to provide notice and to cooperate

The underlying incident occurred on the Yates' jobsite in November 17, 2008. ARIC says it did not receive actual notice of the claims or potential claims until March or

30

April of 2009, four or five months after the incident.  Because of this late notice, ARIC says it has been prejudiced because it could not conduct an independent investigation into the claims.  ARIC also says that Yates has failed to cooperate by refusing to provide ARIC with documents, investigative materials, and expert reports, associated with Yates' investigation of the scaffolding collapse and injuries on its jobsite, until ARIC agrees to keep all information confidential.  Amended complaint, ¶¶ 25-27.  The late notice, says ARIC, made Yates' cooperation and sharing of investigative documents all the more important because by the time ARIC received notice, the jobsite was cleaned up.  Yates failure to provide notice and to cooperate, says ARIC, left it with inadequate information to mount a defense for Yates.

Yates says that summary judgment is appropriate on these grounds because its insurer, Travelers, provided written notice to the ARIC on January 8, 2009, approximately two months after the collapse.  Further, says Yates, ARIC has failed to introduce to the record any evidence showing it has suffered prejudice from Yates' alleged lack of cooperation, a showing necessary to void coverage under the insurance contract.  Finally, Yates argues that the provision of the policy requiring the insured to provide notice and cooperate only applies to the named insured, Spectrum II.

The ARIC insurance policy contains the following provision, requiring notice and cooperation:

Duties in the Event of Occurrences, Offenses, Claim or Suit
   a.  You must see to it that we are notified as soon as practicable of an
       "occurrence" or an offense which may result in a claim.
   [. . .]
   b.  If a claim is made or "suit" is brought against any insured, you must:

        (1) Immediately record the specifics of the claim or "suit" and the
        date received: and
        (2) Notify us as soon as practicable.
   c. You and any other involved insured must:
        (1) Immediately send us copies of any demands, notices,
        summonses or legal papers received in connection with the claim
        or "suit";
        (2) Authorize us to obtain records and other information;
        (3) Cooperate with us in the investigation, or settlement of the claim
        or defense against the "suit"; and
        (4) Assist us, upon our request, in the enforcement of any right
        against any person or organization that may be liable to the insured
        because of injury or damage to which this insurance may also
        apply.   Docket no. 16-3, page 17 of 46.

The policy's Business Owners Coverage Form defines the terms "you" and "your" as

"the Named Insured shown in the Declarations."  Docket no. 16-2, page 27 of 45.

Spectrum II is the named insured listed by the policy.  Docket no. 16-2, page 9 or 45.

     This language appears to remove the duty of notification from an additional

insured.  The policy, however, explicitly requires "any other involved insured" to

cooperate and authorize ARIC to obtain records.

     This court finds that a material issue of fact remains as to whether Yates has

cooperated in compliance with the ARIC policy, and whether its failure to cooperate has

cause prejudice to Yates.

     2.  Who is an insured

     ARIC issued a business liability policy to "Spectrum II, Kelly Walsworth d/b/a"

which designates the business form as "individual."  Amended complaint, ¶ 36.  The

policy carries an endorsement covering, as additional insureds, owners, lessees or

contractors with whom Spectrum works.  This endorsement requires a written

agreement obligating the named insured to provide insurance coverage, stating:

BUSINESS OWNERS COVERAGE FORM

The following is added to **Paragraph C.  Who is An Insured** in **Section II - Liability**:

Any person or organization for whom you are performing operations is also an insured, if you and such person or organization *have agreed in writing in a contract or agreement that such person or organization be included as an additional insured* on your policy. (emphasis added)

ARIC argues that this endorsement does not apply to bring Yates under the policy's "additional insured" umbrella, because Yates has no written contract with Spectrum II.  Yates entered into a subcontractor agreement with "Spectrum Concrete Services" signed by "Telly Walsworth, owner."  The written subcontractor agreement does not mention Spectrum II.  Spectrum II, et al, dispute that Spectrum II had a subcontract with Yates.  In their answer and defenses to Yates' cross claim, Spectrum, et al, say:

Yates contracted with Spectrum Concrete Services, LLC to perform the subject Contract [. . .].  Spectrum Concrete Services, LLC ceased doing business shortly after the Contract was entered and Telly Walsworth d/b/a Spectrum, II, not SCS, performed the work and was paid by Yates up until the collapse in question.  As Spectrum II was not required by contract to carry worker's compensation insurance by Yates, the Cross Claim must be dismissed.  Spectrum II, et al's answer and defenses at 3, docket no. 80.

Yates argues that it is an additional insured under the policy.  It points to the fact that Spectrum II was performing work for Yates at Yates' jobsite when the workers were injured.  Spectrum II is a d/b/a for Telly Walsworth, who signed the subcontractor agreement under the company name Spectrum Concrete Services.  Yates claims that Spectrum Concrete Services, which contracted with Yates, is also a d/b/a of Telly Walsworth.  Because a d/b/a is merely an alterego of the principal, says Yates, Telly Walsworth is the contracting party for both the subcontract and the ARIC insurance

33

contract.  Yates cites an admission by Spectrum II in its response to ARIC's amended complaint which states, "[t]hese Defendants would further respond by stating that the subject subcontract was executed by Walsworth d/b/a 'Spectrum Concrete Services,' with no express mention of the 'LLC.'"  Spectrum II, et al's answer to the amended complaint, docket no. 50, ¶ 39.

Yates also argues that under Mississippi law, the "additional insured" provision in the ARIC policy covering Spectrum II "is triggered when a subcontractor's employee makes a claim for injuries against a general contractor, so long as the injuries arose out of the operations the subcontractor was performing for the general contractor."  Yates' motion for partial summary judgment, docket no. 112, ¶ 10;  *Roy Anderson Corp. v. Transcont. Ins. Co.*, 358 F.Supp.2d at 562; *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 498 (5th Cir. 2000).  For an accident or injury to "arise out of the operations of a named insured," thus triggering the subcontractor's policy coverage, "it is not necessary for the named insured's acts to have 'caused' the accident; rather, it is sufficient that the named insured's employee was injured while present at the scene in connection with performing the named insured's business, even if the cause of the injury was the negligence of the additional insured."  *Mid-Continent*, 206 F.3d at 498 (citations omitted).

The cases cited by Yates address whether an incident or occurrence is sufficiently related to the subcontractor's business to trigger the subcontractor's insurance coverage.  These cases, however, involve contractors and subcontractors who have admittedly entered into a written contract.  In the *Mid-Continent* case, one of the parties claims the contractor-subcontractor agreement as invalid under Texas law,

34

but neither party denies entering the agreement.

This case *sub judice* can be distinguished from those cited by Yates because, although the ARIC policy covers an additional insured, it does so only if that party has a written agreement with the named insured for coverage. The issue of whether Yates and Spectrum II have a written agreement is a disputed issue of fact.

3.  Other Insurance:  ARIC is excess to Yates' primary insurer, Travelers

Travelers is Yates' primary insurer. The ARIC policy issued to Spectrum II contains an "other insurance" clause, and ARIC claims that even if Spectrum Concrete Services and Yates were covered under its policy, it would serve as excess insurance with no duty to defend. In ARIC's response to Yates' motion for summary judgment, it limited its argument on this point to say that its efforts to obtain information regarding the "other insurance" from Yates' primary insurer, Travelers, has been "thwarted by the efforts of Yates." Docket no. 117 at 4.

Yates argues that although a dispute over an "other insurance" clause is generally resolved by comparing the applicable policies, in this case the ARIC insurance coverage was provided as part of the consideration for construction work and must be viewed as primary.

The ARIC insurance policy contains the following clause:

SECTION III - COMMON POLICY CONDITIONS 9APPLICABLE TO
SECTION 1 - PROPERTY AND SECTION II - LIABILITY)

H.  Other Insurance
. . .

35

    2. Business Liability Coverage is excess over:
       a. any other insurance that insures for direct physical loss or
         damage; or
       b. Any other primary insurance available to you covering liability for
         damages arising out of the premises or operations for which you
         have been added as an additional insured by attachment or
         endorsement.
    3. When this insurance is excess, we will have no duty under Business
       Liability Coverage to defend any claim or "suit" that any other
       insurer has a duty to defend.  If no other insurer defends, we will
       undertake to do so; but we will be entitled to the insured's rights
       against all those other insurers.

Although the Travelers policy is not in the record, the court assumes for sake of argument that it contains an "other insurance" clause similar to the one in the ARIC policy.

As a general rule, when two insurance policies provide primary coverage with respect to a particular insured and claim, and each contains an "other insurance" clause, the insurers share the risk.  *See American Indemnity Lloyds v. Travelers Property & Casualty Ins.*, 335 F.3d 429, 435 (5th Cir. 2003).  "[A]n indemnity agreement between the insureds [. . .], such as is commonly found in the construction industry, may shift an entire loss to a particular insurer notwithstanding the existence of an 'other insurance' clause in its policy."  *Id* at 436.  When the insurance in question "is provided as part of the consideration for construction work, it should be viewed as primary insurance."  2011 WL 96523, *2 (S.D.Miss 2011)(citing *See American Indemnity Lloyds v. Travelers Property & Casualty Ins.*, 335 F.3d at 439).

Case law supports Yates' contention that the "other insurance" clause in the ARIC policy does not necessarily make it excess to other insurance.  The ARIC policy may be primary in this case if Yates can prove that it was provided as consideration

under a valid subcontract between Yates and Spectrum II.  The existence of a contract

between Yates and Spectrum II remains a material question of fact.

     4.  Employer's liability exclusion

     ARIC argues that tort claims by employees are not covered under its policy

because of its "employer's liability" exclusion.  This exclusion states:

> SECTION II - LIABILITY
> B.  Exclusions
>   1.  Applicable to Business Liability Coverage
>   This insurance does not apply to:
>     e.  Employer's Liability
>     "Bodily injury" to:
>       (1) An "employee" of the insured arising out of and in the course
>       of:"
>         (a) Employment by the insured; or
>         (b) Performing duties related to the conduct of the insured's
>         business; or
>       (2) The spouse, child, parent, brother or sister of that
>       "employee" as a consequence of Paragraph (1) above.

     Yates counters that the policy contains a "separation of insureds" clause, which

makes this exclusion ineffective against Yates.  Yates cites *Centennial Insurance Co. v.*

*Ryder Truck Rental, Inc.*, 149 F.3d 378 (5th Cir. 1998) which addresses the application

of the "separation of insureds" clause under Mississippi insurance law.  In *Centennial*,

Scholastic Book Fairs, Inc. ("Scholastic") rented a truck from Ryder.  *Id* at 380.  Ryder

obligated Scholastic, as part of the lease agreement, to purchase liability insurance and

to hold Ryder harmless for any injuries sustained in the use of the truck.  *Id.*  Scholastic

purchased business auto and commercial general liability insurance from Centennial

Insurance Company ("Centennial), and added Ryder as an "additional insured" under

those policies.  *Id.*  The general liability policy excluded from coverage the insured's

obligations under workers' compensation law, and bodily injury to the insured's

employees arising from the injured workers' employment.  *Id.*  The policy also contained

a "separation of insureds" provision which stated:

> Except with respect to the Limits of Insurance, and any rights or duties
> specifically assigned in this Coverage Part to the first Named Insured, this
> Insurance applies:
> a.  As if each Named Insured were the only Named Insured; and
> b.  Separately to each Insured against whom claim is made or "suit" is
> brought.  *Id.*

A Scholastic employee injured himself while using the Ryder truck, and sued

Ryder for his injuries.  *Id* at 381.  Ryder requested a defense and indemnity from

Centennial.  *Id.*  Centennial denied coverage based on the policy exclusions for workers'

compensation claims and employee bodily injury.  The court granted summary judgment

in favor of Centennial finding that the language of the policy excluded coverage for

Ryder.  *Id.*  On appeal, the Fifth Circuit reversed.  The Fifth Circuit found that the

"insurance policy's separation of insureds provision [. . .] limits the applicability of other

provisions excluding from coverage potential obligations [. . .]."  *Id* at 380.

The separation of insureds clause requires that the insurer treat each insured as

if it is the only insured under the policy, and apply the language of the policy to that

unique insured.  In order to determine the effect of the separation of insureds language

on the exclusions, the Fifth Circuit inserted the language from the separation of

insureds' clause into each exclusion provision.  The employer's liability clause then read

that the policy excluded coverage for "'[b]odily injury' to . . . [a]n employee of [the

insured who is seeking coverage or against whom a claim or 'suit' is brought] arising out

of and in the course of employment by [the insured who is seeking coverage or against

whom a claim or 'suit' is brought]."  *Id* at 383.  Under this reading of the exclusion, the

court found that the policy excluded coverage only if the insured requesting coverage was the employer of the claimant or plaintiff.  Ryder was not the injured worker's employer, and thus the exclusion did not apply to Ryder.  The Fifth Circuit held that Ryder must be afforded coverage under the Scholastic policy.

Spectrum II's insurance policy with ARIC contains a separation of insureds clause identical to the one in *Centennial v. Ryder*.  Applying the logic from *Centennial* brings this court to the conclusion that the employer liability exclusion does not apply to Yates which is not the employer of the injured workers.

Like Yates' other legal arguments regarding its counter claim against ARIC, coverage under the ARIC policy is predicated on the existence of a valid, written agreement between Yates and Spectrum II.  As mentioned in Section II.B.2. above, material questions of fact preclude determination of this issue at the summary judgment stage.

5.  Workers' compensation exclusion

The ARIC insurance policy contains the following exclusion:

SECTION II - LIABILITY
B.  Exclusions
    1.  Applicable to Business Liability Coverage
        This insurance does not apply to:
        . . .
        d.  Workers' Compensation and Similar Laws
            Any obligation of the insured under a workers' compensation,
            disability benefits or unemployment compensation law or any
            similar law."  ARIC policy no. ATA1416900, docket no. 16-3, at
            29 of 43.

In the *Centennial* case, the rationale which rendered the employer's liability exclusion inapplicable, applied equally to the workers' compensation exclusion.  The

workers' compensation exclusion did not apply to Ryder, because as a third party which leased a truck to Scholastic, it had no obligations to Scholastic's employees under workers' compensations law.

The reasoning from *Centennial* yields the opposite result here.  Yates has argued that it is protected by the MWCA from tort liability because it is a statutory employer under that law.  For Yates to benefit from workers' compensation immunity, it must have an obligation to provide workers' compensation insurance as a contractor.  The workers' compensation exclusion provision applies to Yates as a separate insured under the policy, just as it does to Spectrum II.  As the court found above in Section II.A.1., Yates had a liability or duty under the MWCA to ensure that Spectrum II's workers were covered by compensation insurance.  Had Spectrum II not provided coverage, the employees could have sought coverage from Yates, or sued Yates if Yates failed to pay compensation.  Yates' liability for coverage under the Act is the reason it enjoys immunity if it complies with the MWCA.  Both Spectrum II and Yates had a statutory obligation under workers' compensation law.  This exclusion, therefore, applies equally to Yates as to Spectrum II.

Yates also raises the argument that while the workers' compensation exclusion may relieve ARIC of its duty to indemnify Yates, ARIC's duty to provide a defense is broader than its duty to indemnify.  The workers sued Yates in tort, therefore no workers' compensation claims are at issue, says Yates, until a court determines that those tort claims fall under workers' compensation law.  Until that time, says Yates, ARIC owes it a defense.  Insurers commonly provide a defense under a reservation of rights when coverage is in question.  Yates, however, has not briefed this issue, nor

40

provided any legal authority to support it.  Further, this argument would require this court to decide conclusively that Yates is an insured under the ARIC policy.  Questions of fact remain regarding this coverage.

      6.  Definition of "occurrence" and "property damage exclusion"

      In its response to Yates' motion for summary judgment, ARIC did not address its coverage defenses of "property damage not result of occurrence" and "property damage exclusion."  These were Counts VIII and IX in its amended complaint.  At oral argument the attorney for ARIC stated that Mississippi law has changed since they first pressed these claims.  These defenses assume coverage for Yates under the insurance policy in question.  Because ARIC no longer presses these claims, and because their resolution would not change the decision of the court, the court need not address their merits at this time.

### III.  Conclusion

      For the reasons discussed above, this court grants Yates' motion for summary judgment with respect to its cross claim against the individual co-defendants [docket no. 79].  Although material issues of fact remain regarding whether Yates and Spectrum II have a binding, written contract with respect to Spectrum II's work on the JARM project, the responsibilities and immunity under the MWCA encompass the contractor-subcontractor relationship established by the facts of this case.

      This court finds that material issues of fact regarding the contractual relationship and obligations between Yates and Spectrum II necessitate denying Yates' motion for partial summary judgment on ARIC's underlying claims and Yates' counter claims [docket no. 112].  This court has found that Yates was a statutory employer to Spectrum

II's workers injured on the Yates jobsite.  The statute, however, has broad application based on the parties' relationship.  Facts sufficient to create statutory coverage, may not be sufficient to create contractual obligations.  In order to contractually obligate ARIC to provide coverage to Yates, the policy requires Telly Walsworth d/b/a Spectrum II to "have agreed in writing in a contract or agreement that such person or organization be included as an additional insured on your policy."  Whether this occurred, thus making Yates' an additional insured under the ARIC policy, is a material question of fact which precludes summary judgment.

This court will hold a status conference with the parties once they have had ample time to study this opinion.  At that status conference, the parties should be prepared to address their perspectives on the court's approach and briefing schedule on the remaining issues.


**SO ORDERED AND ADJUDGED**, this, the 27th day of March, 2012.


**s/ HENRY T. WINGATE**
**UNITED STATES DISTRICT JUDGE**


Memorandum Order and Opinion
Civil Action No. 4:09-cv-181-HTW-LRA

42